UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NICHOLAS J. STEINKE,

        Plaintiff,

        v.                                      Case No. 21-cv-0696-bhl

AMBER AGUILERA, et al,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Nicholas J. Steinke, who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights at the Kenosha County Jail and the Kenosha County Detention Center. This matter comes before the Court on Steinke's motion for leave to proceed without prepaying the full filing fee, "motion to obtain and secure video evidence," and to screen his amended complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Steinke has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Steinke has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $11.21. Steinke's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Steinke was an inmate at the Kenosha County Jail ("the jail") from April 16, 2021 to April 24, 2021. Dkt. No. 6 at 1-3. He was then transferred to Kenosha County Detention Center ("the detention center") and released from custody on June 17, 2021. *Id.* at 3-6. Steinke names as defendants 22 specifically identified individuals and a number of unidentified "John and Jane Doe" defendants, most of whom appear to have worked at the jail or the detention center. *Id.* His individually named defendants include David Beth, the Kenosha County sheriff.

Steinke alleges that he injured his lower back, knees, right forearm, and left leg during a work-related accident shortly before his incarceration and could not lift any more than five pounds or stand for long periods of time. *Id.* at 1. He arrived at the jail on April 16, 2021 and told "John Doe COs" about his injury. *Id.* at 1-2. They stated that it was "duly noted" and then placed him in a cold holding cell with concrete floors for over five hours without something to sit on, causing pain. *Id.*

Later that same day, Nurse Aguilera conducted his "intake screening." *Id.* Steinke told her about his pain/injury and asked for the following medical accommodations: something to sit on (such as a blanket, a donut, or a double mattress), a back brace, and a knee brace. *Id.* Aguilera stated that the institution did not allow her to order the accommodations he requested; and she only ordered ibuprofen. *Id.* Steinke explains later in the complaint that an "NP" (a nurse practitioner) is the appropriate medical professional who is responsible for authorizing the medical accommodations he requested. *Id.* Aguilera stated that she would make a notation of his pain/injuries and requests for medical accommodations and would "put him in to see the nurse."

*Id*. Tammy Witt then saw Steinke and discussed his medical condition and the medical accommodations he requested. *Id*. Witt denied his requests for medical accommodation stating, "well we wouldn't do that [because] we don't want inmates to be too comfortable or they'd never leave." *Id*. Steinke then told "every John Doe Nurse and John Doe CO" of his pain and no one resolved the issue. *Id*. Steinke was in constant pain during this time. *Id*.

On April 21, 2021, Nurse Tyce examined Steinke and she, like Aguilera, ordered Ibuprofen. *Id*. Tyce also stated, as Aguilera had, that she could not order the medical accommodations he requested and that he would "have to speak with NP." *Id*. at 2-3. She also entered an order for Steinke to see an NP. *Id*. Later that day, Steinke told Sgt. Carvello about his pain/injury and requests for medical accommodations. *Id*. at 3. Sgt. Carvello also did not resolve the issue. *Id*.

A few days later, Steinke transferred to the detention center. *Id*. Steinke states that Sgt. Reinersman dismissed his inmate complaint at the detention center even though "he had no clue what was going on at the other facility." *Id*. Steinke states that Sgt. Carvello should have handled his inmate complaint. *Id*.

On or around May 1, 2021, Steinke told two "John Doe Psychs" about his pain/injuries and requests for medical accommodations. *Id*. They said they would "document it" and contact the Health Services Unit (HSU) to make sure it was taken care of. *Id*. On or around May 3, 2021, Sgt. Reinersman acknowledged that Steinke appeared to be in pain, but he stated that he could not do anything because HSU handled medical issues. *Id*. Around that same time, Steinke also told CO Bedford, CO Schultz, Lt. Gray, and "every CO [he'd] seen" about his pain/injuries and request for medical accommodations but none of them resolved the issue. *Id*.

On May 5, 2021, Nurse Schlosser ordered an ice pack and gave Steinke stretches for his pain. *Id*. Schlosser also stated that she could not order the medical accommodations Steinke requested; that an NP would have to do that. *Id*. at 3-4. On May 14, 2021, John Doe Nurse ordered a muscle rub and also told him that only an NP could order the medical accommodations he requested. *Id*. at 4. On May 20, 2021, Steinke saw an NP, who ordered a prescription strength muscle relaxer; this individual would not order the medical accommodations he requested. *Id*. On May 23, 2021, a nurse admitted that they were understaffed and only two nurses were working that shift. *Id*.

On June 4, 2021, Dr. Salam Syed examined Steinke and took him off of the prescription strength muscle relaxer "without ever viewing his medical records." *Id*. Instead, Dr. Syed ordered Tylenol and told Steinke to continue doing his stretches. *Id*.

On June 10, 2021, Steinke had a seizure. *Id*. CO Barvuso called HSU, who responded that no one could go down to see Steinke that day. *Id*. Steinke then asked for ice and Barvuso called HSU again. *Id*. at 4-5. Aguilera responded that Steinke could not have ice, but he would be seen "first thing in the morning." *Id*. at 5. Over the next 3-4 days, Steinke told the following individuals about his seizure related injuries: CO Grimms, CO Christensen, CO Dean, CO Gonzoles, CO Wilks, CO Quintana, CO Engrish, CO Brown, CO Smith and CO Hicks. *Id*. All of these individuals had body-cameras that captured the conversation and they all indicated that Steinke would soon be examined by HSU. *Id*. Steinke states that he was never seen by HSU for his seizure-related injuries. *Id*.

For relief, Steinke seeks monetary damages. *Id*. at 6. He also asks the Court to "obtain and secure video evidence" from the correctional officers' body-cameras at the detention center. Dkt. No. 5.

## THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

Steinke does not explain whether he was a pretrial detainee or a convicted prisoner while incarcerated at the jail and the detention center. If he was a pretrial detainee, his rights arise out of the Fourteenth Amendment's Due Process Clause; if he was a convicted prisoner, his rights arise out of the Eighth Amendment. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 350-51 (7th Cir. 2018) (explaining that an objective reasonableness standard applies to claims brought by pretrial detainees while a deliberate indifference standard applies to claims brough by prisoners). The Court need not determine, at this stage of the litigation, whether Steinke was a pretrial detainee or a convicted prisoner. Instead, it will analyze his claim under the less stringent Fourteenth Amendment standard and will give the parties the opportunity to file appropriate motions, if it is later determined that the Eighth Amendment should apply instead.

To state a claim under the Fourteenth Amendment, Steinke must allege facts from which the Court can infer that: (1) he had an objectively serious medical condition; and (2) the defendants' response to the medical condition was objectively unreasonable. *Williams v. Ortiz*, 937 F.3d 936, 942–43 (7th Cir. 2019). With respect to the second prong, Steinke must allege that the defendants acted "purposefully, knowingly, or perhaps even recklessly" when considering the consequences of his conduct. *Id*. (quoting *Miranda v. County of Lake*, 900 F.3d 335, 353 (7th Cir. 2018)). Negligence or gross negligence does not meet this standard. *McCann v. Ogle Cty.*, 909

F.3d 881, 886 (7th Cir. 2018). "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Williams*, 937 F.3d at 942–43 (quoting *McCann*, 909 F.3d at 886).

Steinke states that he had significant and prolonged pain/injuries from a work-related accident. For purposes of screening his complaint, this allegation is sufficient to support the existence of an objectively serious medical condition. But, with respect to the second element, Steinke's amended complaint only identifies two individuals, Tammy Witt (at the jail) and Dr. Salam Syed (at the detention facility), who could plausibly be determined to have responded unreasonably to his pain/injuries. Steinke alleges that Witt denied him medical care stating, "we don't want inmates to be too comfortable or they'd never leave." And he alleges that Dr. Syed took him off of a prescription strength muscle relaxer "without ever viewing his medical records." Accepting these allegations as true, as the Court must at this stage, they are sufficient to imply that Witt and Dr. Syed failed to seriously consider and attempt to address his medical issues. The Court will allow Steinke to proceed past screening with his claims against these two defendants.

Steinke's allegations against the remaining defendants are another matter. Even accepting his allegations as true, his claims boil down to complaints that he told these numerous persons about his problems, but they failed to resolve his issues to Steinke's satisfaction. As the Seventh Circuit has explained, however, "[the plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be

right." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). "Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job." *Id*. "The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen." *Id*. Steinke readily acknowledges that an NP was the appropriate medical professional to order the medical accommodations he wanted yet he faults various lower-level nurses and correctional officers for failing to order them. These individuals are not responsible for an NP's decision to deny the medical accommodations he wanted.

Moreover, Steinke's allegations show that all of the nurses that did examine him (Aguilera, Schlosser, Tyce, and John/Jane Doe nurses) ordered (at least) ibuprofen and requested for an NP to examine him regarding the accommodations he wanted. Nothing alleged in the complaint suggests that they ignored him, acted unreasonably, or refused to treat him. Further, correctional officers and members of the "psych" team (Sgt. Reinersman, John Doe COs, CO Barvuso, CO Christenson, CO Quintana, CO Bedford, CO Smith, CO Dean, CO Wilks, CO Engrish, CO Brown, CO Grimms, "John Doe Psychs," Lt. Gray, CO Schultz, Sgt. Carvello, and CO Hicks) are entitled to defer to HSU staff to resolve medical care issues. *See Miranda*, 900 F.3d at 344 (holding that jail staff are entitled to rely on the judgment of medical providers regarding medical issues). Nothing alleged in the complaint suggests that these correctional officers and members of the "psych" team acted unreasonably either. They directed him to HSU, which is an appropriate response. The Court notes that Steinke identifies two different medical issues from the detention center, (1) failure to treat pain from a work-related injury; and (2) failure to treat his purported seizures, and these claims belong in different lawsuits as they involved different underlying facts.

Thus, the claims against the correctional officers regarding his purported seizures fail for that reason as well. Finally, Steinke does not allege any facts at all against Neave, Beth, or "John Doe Head of KCDC and KCJ." Thus, the Court will dismiss the remaining defendants from the case.

## MOTION TO OBTAIN AND SECURE VIDEO EVIDENCE

Steinke asks the Court to "obtain" body-camera footage from the correctional officers at the detention center. Dkt. No. 5. But it is not the Court's responsibility to obtain evidence on behalf of a party. Steinke must do that himself by contacting the appropriate official at the detention center and asking that official to store video footage for pending litigation.

## CONCLUSION

The Court finds that the plaintiff may proceed with a claim against Tammy Witt regarding her alleged denial of medical care for his work-related injury at the Kenosha County Jail between April 16, 2021 and April 24, 2021; and a claim against Dr. Salam Syed regarding his alleged denial of medical care for his work-related injury at the Kenosha County Detention Center between April 24, 2021 and June 17, 2021.

**IT IS THEREFORE ORDERED** that plaintiff's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **GRANTED.** Steinke shall pay the remainder of the civil case filing fee as he is able.

**IT IS FURTHER ORDERD** that Amber Aguilera, Sgt. Reinersman, Yvonne Schlosser, Mage Neave, Cathryn Tyce, "John and Jane Doe Nurses," "John Doe COs," "John Doe Head of KCDC and KCJ," David Beth, CO Barvuso, CO Christenson, CO Quintana, CO Bedford, CO Smith, CO Dean, CO Wilks, CO Engrish, CO Brown, CO Grimms, "John Doe Psychs," Lt. Gary, CO Schultz, Sgt. Carvello, and CO Hicks are **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that the plaintiff's motion to secure and obtain video evidence (Dkt. No. 5) is **DENIED.**

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon Tammy Witt and Dr. Salam Syed pursuant to Federal Rule of Civil Procedure 4. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Witt and Dr. Syed shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that copies of the complaint and this order be sent to the administrator of the Kenosha County Jail, as well as to the Kenosha County Sheriff, and the Kenosha County Corporation Counsel.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution,

and Oshkosh Correctional Institution. All other plaintiffs must submit the original document for each filing to the Court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 27th day of July, 2021.

>s/ *Brett H. Ludwig*
>BRETT H. LUDWIG
>United States District Judge